UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Clarence Carter,

    Plaintiff,                                         Case No.  11-cv-14690

v.

                                                      Sean F. Cox
                                                      District Court Judge

Liberty Insurance Corporation,            R. Steven Whalen
                                                       Magistrate Judge

    Defendant.
_____/

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

       Shortly after purchasing his home ("the Residence), in a transaction that was formalized with a quit claim deed, Plaintiff Clarence Carter applied for a homeowners insurance policy ("the Policy") with Liberty Insurance Corporation ("Liberty Insurance") to insure the Residence from losses associated with, among other things, fire.  The Residence eventually caught fire when the Policy was effective.  Carter, thereafter, timely filed a claim.  Liberty Insurance denied Carter's claim, contending that Carter made a material misrepresentation in his application for homeowners insurance by failing to disclose that the property taxes for the Residence were delinquent for more than two years prior to the Policy's effective date.

       Carter contends that, when he purchased his home, he was not aware that the prior owner failed to pay property taxes and that, regardless, Liberty Insurance was under a duty to investigate whether the property taxes were delinquent or not.  Carter brought an action against Liberty Insurance asserting breach of contract, unjust enrichment, and fraud.  Carter also seeks punitive

damages. Liberty Insurance, thereafter, filed its Motion for Summary Judgment asserting that (1) no genuine issue of material fact exists with regard to Carter's breach of contract and unjust enrichment claims because the Policy was properly rescinded or void *ab initio*; (2) no genuine issue of material fact exists with regard to Carter's fraud claim because Liberty Insurance had no duty to investigate Carter's statements in the application; and (3) no genuine issue of material fact exists with regard to Carter's punitive damages claim because that claim is unsupported by law and fact.

The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decision making process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided on the briefs. For the reasons that follow, this Court **GRANTS** Liberty Insurance's Motion for Summary Judgment.

## BACKGROUND

Carter purchased the Residence, which is located at 9200 Vaughan Street, Detroit, Michigan 48228, from James E. Anderson, Jr., with a quit claim deed, on October 19, 2010. (Docket No. 19, at 2, ¶ 5; Docket No. 19-8, at 4, l. 1–9.) The parties dispute the actual amount paid for the Residence. Carter contends that he paid $15,000. (Docket No. 19-8, at 4, l. 1–9.)

After purchasing the Residence, Carter did not investigate the title or purchase title insurance. (Docket No. 19-8, at 4–5.) Furthermore, he never filled out a 1099 tax form or checked the status of the property taxes. (*Id*.) Instead, it appears that Carter merely filed a quit claim deed formalizing his purchase.

On October 21, 2010, Carter filled out a homeowners insurance policy application ("the Application") with Liberty Insurance to protect the Residence against losses associated with, among

2

other things, fire. (Docket No. 1-1, at 2, ¶ 5–6; Docket No. 19, at 2, ¶ 7.) In the Application, which included a Michigan Property Supplement Application, Carter stated that he purchased the Residence for $12,000 and that the real property taxes were not delinquent and have not been delinquent for two or more years. (Docket No. 19-3, at 2, 7.) Allegedly, unbeknownst to Carter, the previous owner never paid property taxes on the Residence from 2008 to 2010. (Docket No. 19-7.) Liberty Insurance provided a tax statement on the property, which was dated April 13, 2011, and accounts for the 2008, 2009 and 2010 tax years, asserting that the back due property taxes for the property amount to $6,941.32, if paid on or before April, 30, 2011. (*Id.* at 2.)

Michigan Compiled Laws section 500.2103(2) defines an "eligible person" for home insurance purposes "as a person who is the owner-occupant or tenant of a dwelling of any of the following types: a house, a condominium unit, a cooperative unit, a room, or an apartment; or a person who is the owner-occupant of a multiple unit dwelling of not more than 4 residential units." Furthermore, section (j) of that section states that an "eligible person" does not include: "[a] person whose real property taxes with respect to the dwelling insured or to be insured have been and are delinquent for 2 or more years at the time of renewal of, or application for, home insurance." M.C.L. § 500.2103(2)(j). The parties dispute whether section (j) is a mandatory requirement for the purposes of a homeowner obtaining home insurance or discretionary.

Liberty Insurance's Michigan Underwriting Property Manual incorporates M.C.L. § 500.2103(2). It describes a non-eligible applicant for homeowners insurance as an individual who "fail[s] . . . to meet one or more of the 'Eligibility Requirements.'" (Docket No. 19-9, at 3.) The underwriting manual defines an eligible applicant for home insurance purposes as:

  [a] person who is the owner-occupant of a house or a person who is the owner-
  occupant of a multiple unit dwelling of not more than 4 residential units. Eligible

3

> person does not include any of the following: . . .
>
> (h) A person who insures or seeks to insure a dwelling which does not meet minimum standards of insurability as established by rules promulgated by the commissioner pursuant to Act No. 306 of the Public Acts of 1969, as amended.
>
> (i) A person whose real property taxes with respect to the dwelling insured or to be insured have been and are delinquent for 2 or more years at the time of renewal of, or application for, home insurance.

(*Id.* at 2–3.)

Likewise, the Application incorporates sections (h) and (i); it asks the applicant:

4. At this time, are the real property taxes on the dwelling to be insured delinquent?

If yes, have the real property taxes on this dwelling been delinquent for two or more years?

(Docket No. 19-3, at 7.) As mentioned before, Carter checked "No" for each of these questions on the Application. (*Id.*) Furthermore, on the signature page of the Application, there is a statement, in the Applicant Authorization section, which states:

> Signing this form does not bind the applicant to complete the insurance but it is agreed that this form and the answers provided by you to questions asked as part of the application process shall be the basis of the contract should a policy be issued. If any questions appearing on this application, or asked as part of the application process have been answered falsely or fraudulently, this entire insurance is null and void and all claims thereunder shall be forfeited . . . .

(*Id.* at 6.) Carter signed his name below this statement. (*Id.*)

Based on Carter's statements in the Application, the Policy was issued, effective October 21, 2010, by Liberty Insurance in favor of Carter. (Docket No. 1-2, at 2, ¶ 5; Docket No. 1-1, at 2, ¶ 5; Docket No. 19-4.) Neither party disputes that the Policy protects against losses associated with fire. (Docket No. 1-1, at 2, ¶ 6; Docket No. 1-2, at 2, ¶ 6; Docket 19, at 2, ¶ 11; Docket No. 19-4.) Liberty Insurance never investigated whether or not any of the statements made in the Application were truthful prior to issuing the Policy.

On or around February 17, 2011, the Residence and the majority of Carter's possessions were destroyed by fire. (Docket No. 1-2, at 2, ¶ 7; Docket No. 24-3.)  Carter timely filed a claim with Liberty Insurance. (Docket No. 1-1, at 2, ¶¶ 7–8.)  Liberty Insurance, thereafter, requested proof of loss and other documentation to support the claim. (Docket No. 19-11.)  Carter sent Liberty Insurance a handwritten list of items allegedly lost in the fire, which Liberty Insurance contends is insufficient to establish proof of loss, pursuant to the Policy. (Docket No. 19-12, at 2–3; Docket No. 24-3; Docket No. 19-6, at 3, ¶ 7.)  On February 24, 2011, Liberty Insurance estimated that the replacement cost for Carter's losses, including the replacement costs of the dwelling, code upgrades and debris removal, totaled around $124,897.38. (Docket No. 1-3.)

On or around the same time, Liberty Insurance was conducting an underwriting review, regarding the statements Carter made in his application. During the underwriting review, Liberty Insurance learned that Carter made a material misrepresentation in his Application with regard to his assertion that there were no property taxes owed on the Residence. (Docket No. 19-5, at 3, ¶ 6; Docket No. 19-6, at ¶ 5.)  The affidavit of Nicholas Marrangoni, Lead Compliance Analyst in Liberty Insurance's Personal Market Product Management Compliance Department, asserts the following findings:

> 6. The following taxes were outstanding and delinquent at the time of Clarence Carter's Application for Insurance (Attachment 2):
>
> 2008- $1,737.45 (with interest, late charges and collection fees, $2,700.56);
>
> 2009- $1,731.81 (with interest, late charges and collection fees, $2,380.76);
>
> 2010-  $1,754.72 (with interest, late charges and collection fees, $1,860.00).

(Docket No. 19-5, at 3, ¶ 6.)  Carter does not dispute these findings.  Liberty Insurance contends that, had the status of the property taxes been properly disclosed, Carter would have been deemed

an "ineligible applicant" and would never have been issued the Policy. (*Id.* at 3–4; Docket No. 19-6, at 3.) Specifically, Marrangoni asserts:

> After the investigation into this matter, it was discovered that Clarence Carter would not have been eligible for homeowners insurance and that no such policy would have been written since the property taxes were delinquent and he misrepresented same on his application for insurance; based on that material misrepresentation, the policy was rescinded and declared void ab initio by letter dated June 28, 2011 signed by former Personal Market Product Management analyst Luanne C. Cape, who is no longer with the Company.

(Docket No. 19-5, at 4, ¶ 8.)

On June 28, 2011, after finishing the underwriting investigation, Liberty Insurance issued a letter denying Carter's claim. (Docket No. 19-10, at 3.) Liberty Insurance also forwarded a separate letter to Carter on June 28, 2011, voiding and/or rescinding the Policy. (*Id.* at 2.) The letter states in relevant part:

> This action has been taken by the company because of what is believed to be a material misrepresentation on your application for homeowner insurance. Specifically, the following information was undisclosed, concealed or otherwise misrepresented:
>
> • At the time you applied for this policy, real property taxes on the property were delinquent for two or more years.
>
> Had the company known of the information, the policy would not have been written.
>
> Your claim, # HD414-17863957-01, for the loss reported to have occurred on or about 2/17/11 is not covered and is hereby specifically denied, since your policy is void, as indicated above.

(*Id.*) The letter also states "that [a] refund check including the return of all premium[s] paid to the Company for this policy will be mailed to you shortly." (*Id.*) A check was later issued to Carter in he amount of $1,170.00 for the policy premiums paid by Carter for the Policy. (Docket No. 19, at 4.)

**STANDARD OF REVIEW**

Summary judgment is proper where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). We view the record in the light most favorable to the nonmoving party and all reasonable inferences will be drawn in favor of that party. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2458, 2552 (1986)). "The judge does not 'weigh the evidence and determine the truth of the matter but . . [.] determine[s] whether there is a genuine issue for trial." *Blackmore*, 390 F.3d at 895 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986)).

**ANALYSIS**

**A.    Liberty Insurance's Motion for Summary Judgment Is GRANTED**

Liberty Insurance asserts that no genuine issue of material fact exists with regard to all of Carter's claims because the Policy was properly rescinded and/or void *ab initio* and there is no evidence or case law supporting Carter's fraud, unjust enrichment, and punitive damages claims. (Docket No. 19, at 24–33.) Carter contends that the misrepresentation regarding the back taxes was innocent and immaterial because failing to disclose unpaid back taxes on an application for homeowners insurance does not increase the risk of loss insured against. (Docket No. 24, at 3–6.) Furthermore, Carter asserts that "M.C.L. § 500.2103(2)[, when read in connection with M.C.L. § 500.2117,] defines the people that insurance companies may not refuse to insure," and that it in no

7

way prohibits insurance companies from choosing to insure "people who do not meet the eligible person definition under M.C.L. § 500.2103(2)." (*Id.* at 4–5.) Carter further claims that if M.C.L. § 500.2103(2)(j) is read narrowly, it only applies to taxes that the homeowner actually accumulates when he or she owns the property. (*Id.* at 5–6.) Finally, Carter contends that Liberty Insurance provides no evidence of any increased premium or rescinded policy due to a prior owner's failure to pay property taxes. (*Id.* at 6.)

### 1. No Genuine Issue of Material Facts Exists With Regard to Whether the Policy Was Properly Rescinded Because Carter's Misrepresentations Regarding the Back Taxes Were Material to Liberty Insurance's Decision to Issue the Policy

There is no genuine issue of material fact as to whether Carter's misrepresentations in the Application regarding the delinquent property taxes were material to Liberty Insurance's decision to issue the Policy.

"It is the well-settled law of [Michigan] that where an insured makes a material misrepresentation in the application for insurance, including no-fault insurance, the insurer is entitled to rescind the policy and declare it void ab initio. Rescission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer. Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage." *Lake States Ins. Co. v. Wilson*, 231 Mich. App. 327, 331, 586 N.W.2d 113, 115 (1998) (citation omitted). "[A] fact or representation in an application is 'material' where communication of it would have had the effect of 'substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium.'" *Oade v. Jackson Nat'l Life Ins. Co. of Michigan*, 465 Mich. 244, 253–54, 632 N.W.2d 126, 131 (2001) (discussing materiality in the context of misrepresentations made in an application for life

insurance) (quoting *Keys v. Pace*, 358 Mich. 74, 82, 99 N.W.2d 547, 551–52 (1959)). "Rescission is justified in cases of innocent misrepresentation if a party relies upon the misstatement, because otherwise the party responsible for the misstatement would be unjustly enriched if he were not held accountable for his misrepresentation." *Lash v. Allstate Ins. Co.*, 210 Mich. App. 98, 103, 532 N.W.2d 869, 872 (1995); *see also Wheatonn v. Geico Gen. Ins. Co.*, No. 265338, 2006 WL 740080, at * 4 (Mich. Ct. App. March 23, 2006) (holding that a misrepresentation need not be intentional for an insurer to raise the misrepresentation as a basis for a rescission and that "[n]o duty is owed to the insured to investigate or verify representations or to discover intentional material misrepresentations."). "[A]n insurer has no duty to investigate or verify the representations of a potential insured." *See Titan Ins. Co. v. Hyten*, 491 Mich. 547, 570, 817 N.W.2d 562, 576 (2012).

Several Courts in this District have addressed the issue whether the failure to report delinquent taxes on a policy for homeowners insurance is a material misrepresentation, regardless of whether the potential insured actually knew whether the taxes on his or her home were delinquent or not. In *Love v. Liberty Ins. Corp.*, No 11-10740, 2011 WL 5143383 (E.D. Mich. October 31, 2011), plaintiff completed and signed an application for homeowners insurance with Liberty Insurance regarding a home he recently purchased, which was formalized in a quit claim deed, asserting that the property taxes were up to date. *Id.* at * 1–2. A policy was issued based on his representations in the application. *Id.* Plaintiff's home eventually caught fire, and he filed a claim. *Id.* During the underwriting investigation, it was learned that the previous owner never paid the property taxes on the property from 2007 to 2009. *Id.* at *1. Liberty Insurance rescinded the policy, citing a provision in the Application which states that, "[i]f any questions appearing on this application, or asked as part of the application process have been answered falsely or fraudulently,

9

this entire insurance policy is null and void and all claims thereunder shall be forfeited." *Id.* The Court held that Liberty Insurance was entitled to rescind the policy because plaintiff made a material misrepresentation in his application for insurance benefits, regardless whether the misrepresentation was innocent or whether Liberty Insurance could have easily ascertained the status of the property taxes. *Id.* at * 2.

In *Campbell v. Liberty Mut. Grp.*, No. 10-14179, 2011 WL 2445706 (E.D. Mich. June 14, 2011), the plaintiff, in his application for homeowners insurance, misrepresented that he never filed a claim with another insurance company in the last five years and that the property taxes were not delinquent. *Id.* at *1–2. The Court held that Liberty Mutual Group properly rescinded the policy because the misrepresentations were material. *Id.* at *3–4. Specifically, with regard to the delinquent property taxes misrepresentation in the policy application, the Court held that it is undisputed that the misrepresentations were material because the statements were incorrect when they were made and Liberty Mutual Group would not have issued the policy had it known the truth. *Id.*; *see also Brooks v. Liberty Mut. Fire Ins. Co.*, No. 09-cv-10352, 2009 WL 5171728, at *5–7 (E.D. Mich. Dec. 30, 2009).

Carter asserts that "M.C.L. § 500.2103(2)[, when read in connection with M.C.L. § 500.2117,] defines the people that insurance companies may not refuse to insure," and that it in no way prohibits insurance companies from choosing to insure "people who do not meet the eligible person definition under M.C.L. § 500.2103(2)." (Docket No. 24, at 4–5.) Carter also claims that if M.C.L. § 500.2103(2)(j) is read narrowly, it only applies to taxes that the homeowner actually accumulates when he or she owns the property. (*Id.* at 5–6.) Finally, Carter contends that Liberty Insurance provides no evidence of any increased premium or rescinded policy due to a prior owner's

10

failure to pay property taxes. (*Id.* at 6.)

> Michigan Compiled Laws section 500.2103(2)(j) states:
>
> (2) 'Eligible person', for home insurance, means a person who is the owner-occupant or tenant of a dwelling of any of the following types: a house, a condominium unit, a cooperative unit, a room, or an apartment; or a person who is the owner-occupant of a multiple unit dwelling of not more than 4 residential units. Eligible person does not include any of the following: . . .
>
>> (j) A person whose real property taxes with respect to the dwelling insured or to be insured have been and are delinquent for 2 or more years at the time of renewal of, or application for, home insurance.

M.C.L. § 500.2103(2)(j). Whether the "eligible person" provision in M.C.L. § 500.2103(2) is mandatory or discretionary is inapposite. Insurance policies are contracts subject to the same construction principles. *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 461, 703 N.W.2d 23, 26 (2005) ("We hold, first, that insurance policies are subject to the same contract construction principles that apply to any other species of contract."). Where a provision is not ambiguous, it is enforced as written unless there is a defense to enforcement. *See id.*; *see also Raska v. Farm Bureau Mut. Ins. Co. of Mich.*, 412 Mich. 355, 361–63, 314 N.W.2d 440, 439–40 (1982). Here, the policy clearly states:

> Signing this form does not bind the applicant to complete the insurance but it is agreed that this form and the answers provided by you to questions asked as part of the application process shall be the basis of the contract should a policy be issued. If any questions appearing on this application, or asked as part of the application process have been answered falsely or fraudulently, this entire insurance is null and void and all claims thereunder shall be forfeited . . . .

(Docket No. 19-3, at 6.) Carter breached the terms of the Policy and the Application by failing to disclose of the status of the back taxes. Thus, the Policy is "null an void." As mentioned before, Courts in this District have already determined that misrepresentations with regard to the status of property taxes are material. In addition, there are no defenses to contract enforcement because, as

will be further discussed in the next section, there is no genuine issue of material fact with regard to Carter's fraud claim.

> 2. **No Genuine Issue of Material Fact Exists With Regard to Whether Liberty Insurance Engaged in Fraud, Was Unjustly Enriched and Is Subject to Punitive Damages Because Liberty Insurance Owed No Duty to Investigate Carter's Misrepresentations**

Carter infers that Liberty Insurance engaged in fraud and was unjustly enriched because it did not further investigate his statements about the back property taxes and, accordingly, rescind the Policy. (Docket No. 1-2, at 4–6.) Carter prays for $5,000,000 in punitive damages for Liberty Insurance's issuance of a fraudulent insurance policy. (Docket No. 1-2, at 5.) Liberty Insurance asserts that there is no case law or evidence supporting any of those claims. (Docket No. 19, at 24–33.)

The Supreme Court of Michigan recently reaffirmed that an insurer owes no duty to investigate representations made in applications for homeowners insurance, regardless if the representation was made innocently or the facts misrepresented could have been easily ascertained. *See Titan Ins. Co.*, 491 Mich. at 570–73, 817 N.W.2d at 576–77 (holding that "an insurer has no duty to investigate or verify the representations of a potential insured"). Carter offers no convincing argument or authority suggesting that this Court should not follow this precedent. Thus, Liberty Insurance owed not duty to investigate Carter's misrepresentation.

Furthermore, Carter offers no argument or authority with regard to his claim for punitive damages. Punitive damages are generally not recoverable in Michigan unless expressly authorized by statute. *See Casey v. Auto-Owners Ins. Co.*, 273 Mich. App. 388, 400, 729 N.W.2d 277, 286 (Mich. Ct. App. 2006). Carter merely contends that, since Liberty Insurance could have easily

discovered the status of the back taxes, it engaged in conduct appropriate for punitive damages. For the reasons mentioned before, this Court does not find that argument convincing.

Likewise, Carter offers no argument or authority for his unjust enrichment claim. "In Michigan, the elements for a valid claim of unjust enrichment are: (1) the receipt of a benefit from Plaintiff and (2) an inequity resulting to the Plaintiff because of the retention of said benefit by Defendant." *Brooks*, 2009 WL 5171728, at *8 (E.D. Mich. Dec. 30, 2009) (citing *Barber v. SMH, Inc.*, 202 Mich. App. 366, 375, 509 N.W.2d 791 (1993)). Because of the aforementioned reasons, Liberty Insurance was not unjustly enriched. It properly rescinded the policy and refunded the premium payments.

## CONCLUSION AND ORDER

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: November 19, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 19, 2012, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

13